AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black iPhone<br>Seized as FP&F No. 2025565400002404<br>(Target Device 2) | )<br>)<br>)   Case No. '24 MJ4765<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Darnell G. Bembo, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Darnell G. Bembo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date: 12/19/2024

*Judge's signature*

City and state: San Diego, California     HON. STEVE B. CHU, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Black iPhone
Seized as FP&F No. 2025565400002404
("Target Device 2")

**Target Device 2** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **November 28, 2024 through December 12, 2024**:

a.  tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.  tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Darnell G. Bembo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black Samsung Cellphone
> Seized as FP&F No. 2025565400002402
> **("Target Device 1")**
>
> Black iPhone
> Seized as FP&F No. 2025565400002404
> **("Target Device 2")**

Collectively, the **Target Devices**, as further described in Attachments A-1 and A-2, to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Josue Roberto SUAREZ Ruiz and Jesus Ernesto PEINADO Armenta, for transporting and moving illegal aliens namely, Jose Miguel ALBAN Yunga and Sergio CABRERA Aldana(collectively, the "Material Witnesses") within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2007 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for 17 years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

3

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On December 12, 2024, Supervisory Border Patrol Agent (SBPA) L. Perez and Border Patrol Agent A. Camacho were performing their assigned duties in the Chula Vista Border Patrol Station's area of responsibility. SBPA Perez and BPA Camacho were in plain clothes as part of the Chula Vista Station's Intelligence Division.

12. At approximately 12:40 PM, BPA A. Gaspar dropped off BPA D. Raposa, at Otay Lakes County Park which is a known area for illegal smuggling activity and popular for smugglers to pick up illegally crossed individuals. As BPA Raposa approached the area, she saw a Hispanic adult male, wearing a red jacket, sitting at one the benches and looking towards to the hiking trails. BPA Raposa sat at a bench directly behind him and almost immediately observed three males running down a hiking trail directly northeast of the area. BPA Raposa also observed the male in the red jacket quickly get up from his seat, run towards a nearby parked vehicle, and get into the driver's seat. BPA Raposa then observed the three males get into the same gray vehicle as the male in the red jacket. The vehicle pulled out of its parking spot and drove towards the exit of the park. At approximately 12:50 PM, BPA Raposa relayed observations to fellow agents.

13. BPA Gaspar was parked near the park entrance and observed the grey Nissan Sentra pass his location at a high rate of speed. BPA Gaspar advised agents that the Nissan was traveling northbound. SBPA Perez positioned himself north of the Nissan's location with a Vehicle Immobilization Device (VID) near the intersection of Wueste Road and Olympic Parkway/Lake Crest Drive. As the Nissan approached SBPA Perez location, he deployed the VID which struck the front and rear driver side tires. The driver of the Nissan later identified as defendant Josue Roberto SUAREZ Ruiz, continued to drive at a high rate

of speed. Acting Watch Commander (AWC) J. Gutierrez observed the Nissan pass his location on Lake Crest Drive and attempted a vehicle stop. SUAREZ failed to yield running through several stop signs. SUAREZ drove west onto Shadow Crest Court. SUAREZ stopped the vehicle and all occupants of the vehicle exited running into several backyards of homes.

14. After a brief search, SBPA Perez encountered SUAREZ attempting to conceal himself inside a trash can. SBPA Perez detained SUAREZ and recognized him from the earlier VID deployment. At approximately 1:09 PM., SBPA Perez placed SUAREZ under arrest.

15. At approximately 1:20 PM., BPA Mendivil was approached by a homeowner and advised that there was an individual hiding inside his garage. With the homeowner's permission, BPA Mendivil approached the individual and conducted an immigration inspection. The individual later identified as material witness Jose Miguel ALBAN Yunga stated that he is a citizen of Ecuador without any immigration documents allowing him to enter or remain in the United States legally. At approximately 1:25 PM., BPA Mendivil placed ALBAN under arrest.

16. While BPA A. Camacho was looking for the other outstanding individuals, he was approached by two Chula Vista Police Officers. The Officers advised that they received a citizens report of two individuals matching the descriptions of the individuals agents were searching for were hiding underneath a black Lexus parked in the driveway of 1324 Silver Hawk Way. BPA Camacho responded to the address and as he arrived the owner of the home advised that the two individuals were hiding in the yard. After a brief search BPA Camacho encountered two individuals attempting to conceal themselves in trash bins. BPA Camacho identified himself as a Border Patrol Agent and conducted an immigration inspection. One individual later identified as defendant, Jesus Ernesto PEINADO Armenta stated he is a citizen of Mexico without any immigration documents allowing him to enter or remain in the United states legally. The other individual later

6

identified as material witness Sergio CABRERA Aldana also stated he was a citizen of Mexico without any documents allowing him to enter or remain in the United States legally. At approximately 1:30 PM., BPA Camacho placed both PEINADO and CABRERA under arrest.

17. At the time of arrest, the black Samsung cellphone (**Target Device 1**) was found on PEINADO's person. PEINADO claimed ownership of the target device. The target device was subsequently seized. A black iPhone (**Target Device 2**) was found on ALBAN's person. ALBAN claimed ownership of the target device. The target device was subsequently seized.

18. Material witnesses Jose Miguel ALBAN Yunga and Sergio CABRERA Aldana stated they did not have any immigration documents that would allow them to enter or remain in the United States legally. ALBAN stated he is a citizen of Ecuador and CABRERA stated he is a citizen of Mexico. ALBAN and CABRERA stated they agreed to pay between $2000 and $12,000 USD to be smuggled into the United States. ALBAN stated he attempted to use the CBP1 application but got tired of waiting. ALBAN stated they were taken to the United States/Mexico Border on December 11, 2024, at approximately 11:00 PM. ALBAN stated that they walked through the mountains for approximately eight hours. ALBAN and CABRERA stated that they eventually arrived at a park and were instructed to get into a grey four door sedan. ALBAN stated that the foot guide was telling the driver to drive at a high rate of speed. CABRERA stated that the high rate of speed caused him to fear for his life. ALBAN and CABRERA stated that once the vehicle came to a stop, the foot guide told everyone to exit the vehicle and run. ALBAN and CABRERA were able to positively identify Jesus Ernesto PEINADO Armenta as the foot guide

19. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names,

7

electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant and Material Witness were using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **November 28, 2024, through December 12, 2024.**

## METHODOLOGY

20.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed, and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//
//
//

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

23. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//
//

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

25. Because the **Target Devices** were seized at the time of Carlos Antonio BARAJAS' arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **November 28, 2024, through December 12, 2024.**

26. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachments A-1 and A-2 to seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Darnell G. Bembo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 19th day of December 2024.

_____
HON. STEVE B. CHU
United States Magistrate Judge

10